IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| William Spissinger, | ) C/A No. 5:12-3454-DCN-KDW |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) REPORT AND RECOMMENDATION |
| | ) |
| Carolyn W. Colvin,[1] Acting Commissioner | ) |
| of the Social Security Administration, | ) |
| | ) |
| Defendant. | ) |
| | ) |

This appeal from a denial of social security benefits is before the court for a Report and Recommendation ("Report") pursuant to Local Civil Rule 73.02(B)(2)(a)(D.S.C.). Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3) to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his claim for Disability Insurance Benefits ("DIB"). For the reasons that follow, the undersigned recommends that the Commissioner's decision be affirmed.

I.        Relevant Background

   A.    Procedural History

William Spissinger ("Plaintiff") filed an application for DIB on January 19, 2010, alleging disability since November 2, 2009. Tr. 130-31.[2] His application was denied initially and

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the court names Carolyn W. Colvin as Defendant in this action.

[2] "Tr." is an abbreviation for "Transcript of the Record" made before the Commissioner in connection with Plaintiff's claim for DIB. It is located on this court's docket at ECF No. 7.

after reconsideration. Tr. 117-19. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") on October 1, 2010. Tr. 120-21.

A hearing was held before ALJ Ronald S. Robins in Ft. Meyers, Florida[3] on May 19, 2011. Tr. 88-111. By decision dated June 27, 2011, ALJ Robins found Plaintiff not disabled.[4] Tr. 19-32. Plaintiff requested review of the ALJ's decision by the Appeals Council on July 15, 2011. Tr. 18. The Appeals Council denied the request for review on October 11, 2012, thus making the ALJ's decision the final decision of the Commissioner. Tr. 1-6. Thereafter, Plaintiff brought this action by filing a Complaint on December 6, 2012, seeking judicial review of the Commissioner's decision. ECF No. 1.

B.    Plaintiff's Background

Plaintiff was born in 1959 and was fifty years old on his alleged date of onset of disability and fifty-one years old on the date of the ALJ hearing. Tr. 92. He has a high school education and attended college, but he does not have a college degree. Tr. 93. His past relevant work ("PRW") was as a corrections officer captain and a security officer. Tr. 106. He alleges that he has been unable to work since November 2, 2009 because of degenerative disc disease of the lumbar and cervical spine, chronic back pain, high blood pressure, and depression. Tr. 152.

C.    The Administrative Proceedings

1.    The ALJ Hearing

---

[3] Although the hearing transcript cover sheet indicates that hearing was held in Detroit, Michigan, the transcript reveals the hearing took place in Ft. Meyers, Florida. *Compare* Tr. 88 *with* Tr. 90.

[4] At the time the ALJ rendered his decision, Plaintiff was living in Mauldin, South Carolina. Tr. 19.

Plaintiff and Lee Horvath, a Vocational Expert ("VE"), testified before the ALJ at his May 9, 2011 hearing. Tr. 88, 104.

a.    Plaintiff's testimony

Plaintiff testified that he is unable to work primarily due to back pain and neck pain. Tr. 93. He also stated that he could not handle the mental stress associated with his job. *Id*. Plaintiff stated that his medications take "the edge [off] a little bit," Tr. 95, but he also stated that they cause side-effects of fatigue and made him feel a little off balance. Tr. 94. He stated that he had physical therapy, but it did not significantly help, and that he saw a chiropractor for adjustments, but that made him feel worse. Tr. 95. Plaintiff estimated that he can stand and walk about 15 to 20 minutes before he needs to sit or lie down, and that he can sit no more than 30 minutes at a time. Tr. 96. He testified that he has difficulty stooping, bending, twisting his body, squatting, and kneeling. Tr. 97. He also stated that he can do household chores, but for no longer than ten to fifteen minutes at a time. Tr. 98. Plaintiff testified that he uses a shower seat in his walk-in shower, and that he traveled to South Carolina from Florida once with his wife, but they had to frequently pull over. Tr. 99. Plaintiff testified that he sometimes does not get out of bed for one to three days because of his depression. Tr. 101. He testified that he cooks simple meals at home, feeds and walks his dogs, and does some vacuuming. Tr. 98, 102-03.

b.    VE's Testimony

The VE stated that an individual with Plaintiff's vocational background limited to light work with no more than occasional climbing, balancing, stooping, kneeling, crouching, and crawling, avoiding concentrated exposure to vibration and hazards such as moving machinery and unprotected heights, could not perform any of Plaintiff's PRW. Tr. 107-08. The VE testified that Plaintiff had transferable skills which would allow him to do sedentary work as a security officer

(*Dictionary of Occupational Titles* ("*DOT*") code 189.167-034) (50,392 jobs nationwide; 1,840 jobs statewide). Tr. 107-08. The VE stated that she did not have information on whether there were jobs available for Plaintiff if he were limited as described in his own testimony. Tr. 109. Upon questioning by Plaintiff's counsel, the VE stated that an individual who missed work three times a month and who was unable to concentrate for a third of each day could not perform any of the security guard positions about which she testified. Tr. 110.

II.    Discussion

Plaintiff alleges that the Commissioner committed reversible error by not according great weight to his treating physician's opinion that he suffers from disabling limitations, that the ALJ's finding at step two of his analysis that Plaintiff's mental impairments are not severe is not supported by substantial evidence, the ALJ did not appropriately analyze Plaintiff's credibility, the ALJ did not adequately analyze Plaintiff's combination of impairments because he did not discuss Plaintiff's obesity or its effect on Plaintiff's residual functional capacity ("RFC"), and the ALJ improperly relied on VE testimony based on hypothetical questions not supported by substantial evidence. ECF No. 8. The Commissioner answers that the ALJ did not commit any legal error and substantial evidence supports the ALJ's refusal to accord controlling weight to Plaintiff's treating pain management physician's opinions because they were not supported by the record as a whole, the ALJ's step two determination that Plaintiff's mental impairments were not severe, the ALJ's failure to apportion any limitations to Plaintiff's RFC arising from obesity because none of the medical records attributed any functional limitation to Plaintiff's weight, and the credible functional limitations that the ALJ included in the hypothetical questions he asked the VE. ECF No. 9.

4

A.    The ALJ's Findings

In his June 27, 2011 decision, the ALJ made the following findings of fact and conclusions of law:

1.    The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.

2.    The claimant has not engaged in substantial gainful activity since November 2, 2009, the alleged onset date (20 CFR 404.1571 *et seq.*).

3.    The claimant has the following severe impairments: degenerative disc disease, lumbar and cervical, chronic back pain, pain disorder (20 CFR 404.1520(c)).

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that; claimant had unlimited pushing and pulling abilities; claimant may only occasionally climb, balance, crouch, crawl, kneel, or stoop; claimant must avoid concentrated exposure to vibrations and hazards such as moving machinery and unprotected heights; and claimant may not stand or walk for more than two hours total in an eight hour workday or sit for more than six hours in an eight hour workday.

6.    The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7.    The claimant was born on June 20, 1959 and was 50 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563).

8.    The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9.    The claimant has acquired work skills from past relevant work (20 CFR 404.1568).

10.    Considering the claimant's age, education, work experience, and residual functional capacity, the claimant has acquired work skills from past relevant work that are transferrable to other occupations with jobs existing in significant numbers in the national economy (20 CFR 404.1569, 404.1569(a) and 404.1568(d)).

> 11.    The claimant has not been under a disability, as defined in the Social Security Act, from November 2, 2009, through the date of this decision (20 CFR 404.1520(g)).

Tr. 24-32.

        B.    Legal Framework

                1.    The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). Section 423(d)(1)(A) defines disability as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is engaged in substantial gainful activity; (2) whether she has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings; (4) whether such impairment prevents claimant from performing PRW; and (5) whether the impairment prevents the claimant from engaging in substantial gainful employment. *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding

6

disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step). A claimant is not disabled within the meaning of the Act if she can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpt. P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing her inability to work within the meaning of the Act. 42 U.S.C. § § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that she is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981); *see Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (regarding burdens of proof).

## 2.     The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [] made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See* 42 U.S.C. § 405(g); *Richardson v.*

*Perales*, 402 U.S. 389, 390 (1971); *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002) (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings and that his conclusion is rational. *See Vitek v. Finch*, 438 F.2d at 1157–58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

C.     Analysis

1.     Weight Given to Treating Physician's Opinion

As stated previously, Plaintiff contends that the ALJ should have given controlling weight to the opinion rendered by his treating pain-management physician, Dr. Chun, who opined that Plaintiff's degenerative disc disease, chronic pain, and depression severely limited his functional ability to do even limited "low stress" work on a "sustained basis." Tr. 424. Plaintiff alleges that the ALJ "inflates the quality and quantity of his activities," Pl. Br. 14, ECF No. 8, when he points to those activities as support for his determination that Dr. Chun's residual functional

8

capacity ("RFC") assessment is not consistent with the other record evidence. *Id*. Plaintiff also contends that Dr. Chun's RFC assessment is adequately supported by "clinical and diagnostic findings" and that the ALJ improperly found otherwise. *Id*. The Commissioner responds that the ALJ's finding that Dr. Chun's RFC assessment should not be given controlling weight is supported by substantial evidence because the reports from other treating physicians do not contain the type of serious and substantial clinical and diagnostic findings that support the nature and extent of the functional limitations placed on Plaintiff by Dr. Chun's assessment. According to the Commissioner, the analysis of Plaintiff's medical reports by state agency consulting physicians and their resulting RFC opinions do not include such severe functional limitations. Def. Br. 18-19, ECF No. 9. Additionally, the Commissioner contends that Plaintiff's own hearing testimony and responses to agency questionnaires about his daily activities support the ALJ's refusal to give Dr. Chun's RFC assessment controlling weight because the extent of functional limitation placed by Dr. Chun is inconsistent with record evidence provided by Plaintiff himself. *Id*. at 19-20.

SSR 96-2p provides that if a treating source's medical opinion is "well-supported and 'not inconsistent' with the other substantial evidence in the case record, it must be given controlling weight[.]" *See* 20 C.F.R. § 404.1527(d)(2) (providing treating source's opinion will be given controlling weight if well-supported by medically-acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record); *see also Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996) (finding a physician's opinion should be accorded "significantly less weight" if it is not supported by the clinical evidence or if it is inconsistent

with other substantial evidence). When assessing a treating source's opinion, the ALJ shall consider the factors in 20 C.F.R. §§ 404.1527(d)(2) through (d)(6).

The Social Security Administration typically accords greater weight to the opinion of a claimant's treating medical sources, because such sources are best able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. *See* 20 C.F.R. § 404.1527(d)(2). However, "the rule does not require that the testimony be given controlling weight." *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992). Rather, "[c]ourts evaluate and weigh medical opinions pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." *Johnson v. Barnhart*, 434 F.3d at 654; 20 C.F.R. § 404.1527(d). The rationale for the general rule affording opinions of treating physicians greater weight is "because the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant." *Johnson*, 434 F.3d at 654 (quoting *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001)).

An ALJ can give a treating physician's opinion less weight "in the face of persuasive contrary evidence." *Mastro*, 270 F.3d at 178. Further, in undertaking review of the ALJ's treatment of Plaintiff's treating physician, the court notes that its review is focused on whether the ALJ's opinion is supported by substantial evidence and that its role is not to "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Craig*, 76 F.3d at 589. Determinations regarding whether a claimant is "disabled" and related legal conclusions are administrative determinations for the Commissioner

and not for medical personnel. 20 C.F.R. § 404.1527(e) (noting certain opinions by medical sources—such as being "disabled" or "unable to work"—are not afforded "special significance").

In the decision under review, the ALJ expressly weighed the opinions of several physicians and psychologists: treating psychologist Dr. Bernstein; non-examining state agency psychologists, Drs. Pena and Cormier; treating physicians Drs. Chun (pain management) and Mayer (neurosurgeon); and non-examining state agency physician Dr. Krishnamurthy. Tr. 26-28, 30-31. The ALJ assigned the greatest weight to the opinions of the state agency psychologists, but discounted the opinions of Drs. Bernstein, Chun, Mayer, and Krishnamurthy. *Id*. For example, the ALJ discounted Dr. Chun's October 2010 responses on a "Spinal Impairment Questionnaire" in which he opined that Plaintiff had severe functional restrictions from his degenerative disc disease, chronic pain, and depression, Tr. 419-25, because the ALJ found that the doctor's opinion was inconsistent with Plaintiff's treatment records, with the fact that Plaintiff worked as a handyman, and engaged in other significant daily activities around the same time that Dr. Chun rendered his assessment. *See* 20 C.F.R. § 404.1527(c)(4).

The ALJ specifically found that Dr. Chun's RFC assessment was not supported by Plaintiff's treatment records and he discussed the relevant treatment records at length in his decision. Tr. 24-28, 30. Independent review of the record discloses, as noted by the ALJ, that Dr. Chun's RFC assessment conflicts with his own treatment notes, which disclose essentially normal objective clinical findings. Tr. 285-96, 390-93. *See Craig*, 576 F.3d at 590 (ALJ may properly discount treating physician's opinion that is inconsistent with the physician's own treatment notes). For example, Dr. Chun stated that his October 2010 assessment was based on clinical findings showing limited range of motion and spinal tenderness and spasm, Tr. 419-20; however,

his treatment notes show that he recorded no such findings two months later during a December 2010 visit with Plaintiff. Tr. 514-15. His office-visit notes from December 6, 2010, indicate that Plaintiff showed no decreased range of motion and that his "spine [was] normal without deformity or tenderness, no CVA tenderness." Tr. 515. Office-visit notes from other physical examinations between 2008 and 2010 by different doctors (Drs. Raja, Walsh, Criss, Mayer, Hearn) also contained generally unremarkable findings, with the exception of some findings of "back tenderness." Tr. 248, 260-61, 319-20, 386, 443, 448, 499. These additional medical records further support to the ALJ's finding that Dr. Chun's RFC assessment was inconsistent with other substantial evidence in the record.

Furthermore, Plaintiff's assertions that the ALJ overstated the significance of his reported daily activities in his analysis of the weight to be given to Dr. Chun's "not even sedentary work" RFC assessment do not require reversal on this point. *See* Pl. Br. 14-15, ECF No. 8. In connection with his discussion of the weight to be given to Dr. Chun's RFC assessment, the ALJ also relied on Plaintiff's testimony about his activities of daily living. Specifically, the ALJ noted that the record showed that Plaintiff performed light housework, did grocery shopping, prepared simple meals, walked and fed his dogs, took out the garbage, and worked as a handyman. Tr. 25, 26, 27, 28; *see also* Tr. 98-100, 168-69, 435, 437. All of these activities are referenced in the cited record pages and lend support to the ALJ's conclusion that Dr. Chun's RFC assessment overstated Plaintiff's actual functional limitations. Plaintiff's level of activity in this case extends beyond simply "doing some dishes, folding laundry, mending, picking up around the house, and alternating sitting with lying down," which this court found insufficient to provide substantial support for an ALJ's rejection of a treating physician's opinion in *Chapman v. Astrue*, No.

12

07–2868–TLW–TER, 2010 WL 419923, *9 (D.S.C. Jan. 29, 2010). *See Webb v. Astrue*, No. 2:11–cv–103, 2012 WL 3061522, *13 (N.D.W. Va. June 21, 2012) (claimant's travel, housework, cooking, and wood-working activities, among other record evidence, sufficient to support rejection of treating physician's RFC opinion).

Finally, no reversible error is shown by Plaintiff's contention that the ALJ was "not qualified to interpret the raw medical data and [Plaintiff's] sporadic activities performed for brief periods of time into a particular RFC finding" because the ALJ is a "layperson." Pl. Br. 16, ECF No. 8. The Agency's regulations and rulings require ALJs to routinely interpret clinical and laboratory findings when making their decisions on a claimant's assertions of disability. *See* SSR 96-2p.[5] Although the ALJ could not substitute his own interpretation of laboratory and clinical findings for those of qualified physicians, he *was* qualified to assess whether the objective

---

[5]     Whether a medical opinion is well-supported will depend on the facts of each case. It is a judgment that adjudicators must make based on the extent to which the opinion is supported by medically acceptable clinical and laboratory diagnostic techniques and requires an understanding of the clinical signs and laboratory findings in the case record and what they signify.

SSR 96-2p, 1996 WL 374188, at *2 . The Ruling continues:

Whether a medical opinion is 'not inconsistent with the other substantial evidence is a judgment that adjudicators must make in each case. . . . [I]t is especially important to have an understanding of the clinical signs and laboratory findings and any treatment provided to determine whether there is an inconsistency between this evidence and medical opinions about such issues as diagnosis, prognosis (for example, when deciding whether an impairment is expected to last for 12 months), or functional effects. Because the evidence is in medical, not lay, terms and information about these issues may be implied rather than stated, such an inconsistency may not be evident without an understanding of what the clinical signs and laboratory findings signify.

*Id.* at *3.

13

medical evidence actually supported Dr. Chun's opinions about Plaintiff's functional limitations. *See, e.g., Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) (ALJ may not substitute own interpretation of laboratory and clinical findings). Here, the ALJ did not substitute his own laboratory and clinical findings for those of the various physicians. Instead, he interpreted, analyzed, and applied them to the facts presented as he was required to do. The ALJ's refusal to give controlling weight to Dr. Chun's RFC assessment is supported by substantial evidence and no reversible error is shown.

2.    The Finding That Plaintiff's Mental Impairments Were Not Severe

Next, Plaintiff contends that the ALJ erred at step two of his analysis in finding that his medically determinable impairments of adjustment disorder and post-traumatic stress disorder caused no more than mild mental limitations and, therefore, were not severe. Pl. Br. 17-22, ECF No. 8. Plaintiff asserts that Plaintiff's treating psychologist, Dr. Bernstein, provided opinions that compelled a finding that Plaintiff met the de minimis threshold for establishing that his mental impairments were severe. *Id.* at 21-22. The Commissioner responds that the ALJ's finding that none of Plaintiff's asserted mental impairments is severe is correct and supported by substantial evidence. Def. Br. 21-23, ECF No. 9; *see* 20 C.F.R. §§ 404.1520a(d)(1), 404.1521(a).

In his analysis at step two and as support for his finding regarding the lack of severity of Plaintiff's mental impairments, the ALJ noted that the record evidence showed that Plaintiff's mental impairments improved when he took anti-depressant medication, and that Plaintiff's GAF scores in November 2010 and April 2011 were determined by mental health professionals to be 70.[6] Tr. 26 (citing to Tr. 436, 488, 490). The ALJ also referenced Plaintiff's daily activities such

---

[6] GAF ["Global Assessment of Functioning"] is a 100-point tool rating overall psychological, social and occupational functioning of people over 18 years of age and older. It excludes

as caring for pets, taking care of his personal needs, cooking simple meals, doing limited household chores, driving, shopping, managing money, using a computer, and watching television, and the mental health findings of his treating psychologist, Dr. Bernstein, which showed that Plaintiff had essentially normal mental functioning. Tr. 27 (citing to Tr. 316, 357). The ALJ also discussed information provided by Plaintiff indicating that he visited with friends, took some trips with his wife, worked as a handyman shortly before the hearing, and Plaintiff's intermittent psychological treatment history and his lack of hospitalization for mental problems. Tr. 28 (citing to Tr. 345-58). Finally, the ALJ noted that both state agency psychologists provided opinions that Plaintiff did not have any severe mental impairments. Tr. 26-28 (citing to Tr. 437).

"Step two of the sequential evaluation is a threshold question with a de minimis severity requirement. *Felton-Miller v. Astrue*, 459 F. App'x 226, 230 (4th Cir. 2011). A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). A non-severe impairment is defined as one that does not "significantly limit [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). Basic work activities include:

   (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;

(2) Capacities for seeing, hearing, and speaking;

(3) Understanding, carrying out, and remembering simple instructions;

(4) Use of judgment;

---

physical and environmental impairment. *See* Am. Psychiatric Ass'n, *Diagnostic & Statistical Manual of Mental Health Disorders* 32 (4th ed. 2000) (section on multi-axial assessments). A GAF score of between 61 and 70 indicates that the individual is experiencing "[s]ome mild symptoms OR some difficulty in social, occupational, or school functioning, but generally [is] functioning pretty well, [and] has some meaningful interpersonal relationships." *Id.* at 34.

(5) Responding appropriately to supervision, co-workers and usual work situations; and

(6) Dealing with changes in a routine work setting.

20 C.F.R. § 404.1521(b). A severe impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms[.]" 20 C.F.R. § 404.1508. A claimant's own description of his physical or mental impairment is not enough to establish that there is, in fact, a physical or mental impairment. 20 C.F.R. § 404.1528(a).

The ALJ's finding that Plaintiff failed to meet the de minimis threshold for establishing that his mental impairments were severe is supported by the ALJ's decision to assign no weight to the opinion of Plaintiff's treating psychologist, Dr. Bernstein, that Plaintiff's "pain prevents [him] from working and [that he] needs continued treatment," found in a May 21, 2010 report. Tr. 26; *see* Tr. 316. In making his decision to afford Dr. Bernstein's opinion no weight on this issue, the ALJ specifically noted that Dr. Bernstein treated Plaintiff "on and off" and had not seen him for a year prior to opining that he was disabled; that Dr. Bernstein's psychological assessment was based primarily on Plaintiff's self-reported back pain, which was outside her field of expertise; that the opinion was unsupported by objective testing and was inconsistent with her own treatment notes; and that the degree of mental limitation assessed by Dr. Bernstein was inconsistent with Plaintiff's considerable daily activities, his moderate GAF scores, and with his lack of hospitalization for mental conditions. Tr. 26-28. The undersigned has reviewed the

16

referenced record evidence and agrees with the Commissioner that substantial evidence supports the ALJ's step two findings regarding the lack of severity of Plaintiff's mental impairments.[7]

### 3.    Evaluation of Plaintiff's Credibility

Plaintiff argues that the ALJ erred in evaluating Plaintiff's credibility because the ALJ applied the incorrect legal standard; overemphasized Plaintiff's daily activities; improperly relied on his own lay interpretation of clinical and laboratory findings; and failed to draw a favorable inference from Plaintiff's work history. Pl. Br. 22-25, ECF No. 8. The Commissioner answers that the ALJ applied the correct legal standard and that his decision to assign minimal credibility to Plaintiff's testimony and statement about the nature and extent of his impairments is supported by substantial evidence. Def. Br. 23-26, ECF No. 9. The ALJ found that "the claimant's statements concerning the intensity, persistence and limiting effects of [his] symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." Tr. 30.

The court is not permitted to make credibility assessments, but must instead determine if the ALJ's credibility assessment is supported by substantial evidence. *Craig*, 76 F.3d at 589. Applicable law holds that in assessing complaints of pain, the ALJ must (1) determine whether there is objective evidence of an impairment which could reasonably be expected to produce the pain alleged by a plaintiff and, if such evidence exists, (2) consider a plaintiff's subjective complaints of pain, along with all of the evidence in the record. *See Craig*, 76 F.3d at 591-92; *Mickles v. Shalala*, 29 F.3d 918, 919-20 (4th Cir. 1994). Although a claimant's allegations about pain may not be discredited solely because they are not substantiated by objective evidence of the

---

[7] Any error at the step two analysis was harmless because the ALJ did consider the mild limitations caused by Plaintiff's mental impairments on his ultimate RFC assessment at step four. Tr. 26-27. *See Washington v. Astrue*, 698 F. Supp. 2d 562, 579 (D.S.C. 2010) ("no

pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which the impairment can reasonably be expected to cause the pain the claimant alleges he suffers. A claimant's symptoms, including pain, are considered to diminish his or her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. § 404.1529(c)(4).

Initially, the undersigned rejects Plaintiff's assertion, based on two Seventh Circuit opinions, *Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012); *Parker v. Astrue*, 597 F.3d 920, 921-22 (7th Cir. 2010), that the ALJ's finding that his testimony lacks credibility should be rejected because of the ALJ's use of "boilerplate language" in his analysis by stating that his complaints "are not credible to the extent they are inconsistent with the above residual functional capacity assessment." Pl. Br. 23-24, ECF No. 8; *see* Tr. 30. Even in the Seventh Circuit it has been held that inclusion of such common language as part of an ALJ's decision does not present reversible error where the remainder of the decision shows the rationale for the ALJ's adverse credibility finding. *See Filius v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012) ("[T]he inclusion of this language can be harmless . . . [i]f the ALJ has otherwise explained his conclusion adequately.").

Moreover, in this case the ALJ did not rely only on that "boilerplate language" in his evaluation of Plaintiff's credibility. Instead, he correctly weighed Plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms against the other relevant evidence in the record such as the numerous medical reports showing normal neurological functioning. Tr.

---

reversible error where the ALJ does not find an impairment severe at step two, provided that he or she considers that impairment in subsequent steps").

30 (citing to Tr. 285-96, 382, 386-87, 392-93). The ALJ also weighed Plaintiff's statements about his limitations against his considerable reported daily activities. Tr. 30 (citing Tr. 435, 437). *See* 20 C.F.R. § 404.1529(c); SSR 96-7p, 1996 WL 374186, at *3-*8 (listing and discussing relevant factors in evaluating claimant's credibility, including whether objective evidence substantiates claimant's allegations and whether the claimants' statements are consistent with other information concerning his daily activities, behavior, and efforts to work).

Although Plaintiff asserts that "the ALJ's lay interpretation of the neurological examination findings and MRI evidence . . . could not supplant the expert opinions from Dr. Chun that are consistent with [Plaintiff's] testimony on his limitations," Pl. Br. 24, ECF No. 8 (citing to Tr. 30), review of the decision and portions of the record cited as support shows this assertion to be without merit. Specifically, the ALJ wrote that, "[a]fter a review of [Plaintiff's] MRI results and a neurological examination, [Plaintiff] was determined to have normal function neurologically," Tr. 30 (citing to Exhibit 9F (Tr. 359-95)). This statement by the ALJ does not mean that he (the ALJ) "determined" that Plaintiff had "normal function." Instead, the record discloses that the normal function determination was made by Plaintiff's treating neurosurgeon, Dr. Mayer and the state agency medical consultant, Dr. Krishnamurthy, who translated Dr. Mayer's objective clinical findings into an observation that Plaintiff showed "no neuro[logical] deficits." Tr. 398-99. Dr. Mayer highlighted the difference between the minimal objective findings and Plaintiff's subjective complaints when he noted in April 2010 that there was "poor correlation between [Plaintiff's] complaints and objective, relevant physical findings." Tr. 374-76.

While an ALJ may not disregard a claimant's subjective complaints *solely* because they are not substantiated by objective medical evidence, the absence of objective medical evidence supporting the claimant's statements is still an important factor in evaluating credibility. *See Hines v. Barnhart*, 453 F.3d 559, 565 n.3 (4th Cir. 2006); *see also* SSR 96-7p, 1996 WL 374186, at*6. In this case, the ALJ's credibility analysis did not rest only on the fact that the objective medical findings did not support Plaintiff's allegations. Instead, as discussed above, the ALJ also relied on Plaintiff's own statements about his participation in significant physical activities of daily living and that he performed handyman work to support his finding that Plaintiff's statements about the nature and extent of his functional limitations were less than credible. Tr. 27-28, 30-31.[8] The ALJ applied the correct law and substantial evidence supports his findings regarding Plaintiff's credibility regarding his description of the nature and extent of his pain and of the functional limitations arising from his conditions.

4.    ALJ's Consideration of the Effect of Obesity on Plaintiff's RFC

Plaintiff also argues that the ALJ erred in failing to discuss whether Plaintiff's obesity qualified as a severe impairment and in failing to consider the effects of Plaintiff's obesity on his RFC. Pl. Br. 8-9, ECF No. 8. The Commissioner answers that Plaintiff never made his obesity a point of contention before the ALJ and any error in the ALJ's failure to discuss Plaintiff's obesity was harmless. Def. Br. 27, ECF No. 9.

Pursuant to SSR 02-1p, 2002 WL 34686281, at **1-7 (SSA Sept. 12, 2002), ALJs are directed to consider the effects of obesity throughout the sequential evaluation process and to

---

[8] No reversible error is shown by the ALJ's failure to include consideration of Plaintiff's long work history in his credibility analysis. While a good work history is certainly one factor that an ALJ may consider in weighing credibility, it is not dispositive. *See Sondergeld v. Colvin*, No. 1:12-cv-161, 2013 WL 3465294, at *6 (W.D.N.C. July 10, 2013).

explain their reasoning and conclusions. *Id*. However, regardless of these directions, it has been held that courts generally will not remand for explicit findings regarding obesity where such findings would not affect the outcome. *See Prochaska v. Barnhart*, 454 F.3d 731, 736-37 (7th Cir. 2006) (citing *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004)) (finding harmless error where the ALJ's decision was based on the opinions of physicians who sufficiently addressed the claimant's obesity, and where the claimant failed to specify how her obesity further impaired her ability to work); *McKinney v. Astrue*, No. 1:11-cv-199, 2012 WL 6931344, at *3 (W.D.N.C. Dec. 11, 2012) (same).

Review of the record in this case discloses that none of Plaintiff's physicians formally diagnosed him with obesity or otherwise attributed any functional limitations to his weight.[9] Thus, the ALJ cannot be faulted for not discussing obesity as one of Plaintiff's impairments. However, even if the ALJ technically erred in failing to discuss and analyze the limiting effects of Plaintiff's weight, any such error was harmless. The ALJ relied on the conclusions in Dr. Krishnamurthy's Physical RFC Assessment, which explicitly referenced Plaintiff's height and weight, Tr. 398, but which did not indicate any functional limitations beyond what the ALJ assessed. Tr. 28-29, 398-401. *See Prochaska*, 454 F.3d at 736-37; *McKinney*, 2012 WL 6931344, at *3. Accordingly, the ALJ's failure to discuss or analyze obesity as a contributing or limiting factor in his RFC determination is supported by substantial evidence. The ALJ's assessment of Plaintiff's RFC to perform "light work" with significant additional restrictions accounts for all

---

[9] Plaintiff cites SSR 02-1p for the proposition that "obesity *can* aggravate a degenerative arthritic condition" Pl. Br. 26, ECF No. 8 (emphasis added); however, he does not cite any medical evidence or opinion showing that his obesity did actually aggravate his degenerative arthritic condition.

exertional or postural limitations supported by substantial evidence in the record.[10] Plaintiff has not shown that his weight, either alone or in combination with his other impairments, warranted a more restrictive RFC. No reversible error is shown by the ALJ's failure to specifically discuss Plaintiff's obesity in his decision.

5.    The Questions to the VE

Finally, Plaintiff argues that ALJ's third hypothetical question to the VE did not properly describe the nature and extent of Plaintiff's physical and mental limitations. Pl. Br. 26-27, ECF No. 8; *see* Tr. 28-31, 108-09. The Commissioner answers that the hypothetical question contained all the physical and mental limitations that the ALJ found supportable under the record before him. Def. Br. 28-29, ECF No. 9.

In his third hypothetical, the ALJ asked the VE the following question and elicited the response also quoted below:

> Q:    No, this is your hypothetical. Stand and walk two hours in eight-hour day. Sit six hours in eight-hour day. The individual could work an eight-hour day. Everything else being the same from the first hypothetical. Does that change your answer?
>     . . . .
>
> A:    No. [11]

---

[10] 20 C.F.R. § 404.1567(b), states:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

[11] In the first hypothetical, the ALJ said of the claimant's limitations:

Tr. 108-09.

The claimant bears the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). A claimant will be considered not disabled if he can still do the kind of work he did in the past. Kind of work "concentrates on the claimant's capacity to perform a type of activity rather than his ability to return to a specific job or to find one exactly like it." *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995). The Commissioner may rely on the general job categories of the *Dictionary of Occupational Titles* ("DOT") as presumptively applicable to the claimant's prior work. *DeLoache v. Heckler*, 715 F.2d 148, 151 (4th Cir. 1983).

Controlling law in this Circuit holds that although it is acceptable for an ALJ to consult a VE for purposes of a step four decision, it is not required that he do so. The ALJ may reasonably rely on the claimant's own statements and descriptions of the exertional and non-exertional requirements of PRW to support the RFC decision. 20 CFR § 404.1560(b)(2); SSR 82-62; *see also Jones v. Astrue*, No. 8:06-2765-JFA-BHH, 2008 WL 597834, *12 (D.S.C. Feb. 28, 2008)

---

**Error! Main Document Only.**The individual could frequently lift 10 pounds. Occasionally lift 20 pounds. Stand and/or walk about six hours in an eight-hour day. Sit about six hours in an eight-hour day. Unlimited with regard to pushing and pulling of hand and foot control.

The individual could occasionally climb, balance, stoop, kneel, crouch, crawl. The individual needs to avoid concentrated exposure to vibration and hazards such as moving machinery and unprotected heights. Tr. 107-08.

In his second hypothetical, the ALJ added a sit/stand option. Tr. 108. In response to both hypotheticals, the VE opined that the hypothetical individual with Plaintiff's transferrable skills could perform the sedentary job of "security officer, which is DOT code 109.167-034." Tr. 107.

(former Fourth Circuit rule precluding VE testimony at step four was superseded by Social Security regulation). For a VE's testimony to be relevant or helpful, it must be based upon a consideration of all the other evidence on the record and must be in response to hypothetical questions which fairly set out all of the claimant's impairments. *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). According to applicable law, the ALJ was required to incorporate in his RFC assessment and corresponding hypothetical questions only those limitations that the record credibly supports. *See Walker v. Bowen*, 889 F.2d at 50; *Gross v. Heckler*, 785 F.2d 1163, 1165 (4th Cir. 1986).

In light of the previous determinations that the ALJ's treating physician and claimant credibility findings and his decision to rely on the state agency physicians' RFC assessments were all supported by substantial evidence, the undersigned is of the opinion that the contested hypothetical accurately reflected all limitations that the ALJ found to be supported by the record. Accordingly, the undersigned also finds that the ALJ properly relied on the VE's response to that hypothetical in determining that Plaintiff could perform a significant number of jobs in the national economy and that Plaintiff fails to present reversible error on this point. *See Schmidt*, 496 F.3d at 846 (where VE testifies in response to appropriate hypothetical questions that the claimant can perform a significant number of jobs, VE's response is substantial evidence in support of the ALJ's step-five determination); *Fisher v. Barnhart*, 181 F. App'x 359, 365 (4th Cir. 2006) ("Because the ALJ's [RFC] determination is supported by substantial evidence and because the challenged hypothetical question merely incorporated that determination, the ALJ committed no error.").

III.    Conclusion and Recommendation

The court's function is not to substitute its own judgment for that of the ALJ, but to determine whether the ALJ's decision is supported as a matter of fact and law. Based on the foregoing, the undersigned finds that the Commissioner performed an adequate review of the whole record, including evidence regarding Plaintiff's mental impairments, and the decision is supported by substantial evidence.

Accordingly, pursuant to the power of the court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in Social Security actions under the Act, it is recommended that the Commissioner's decision be affirmed.

IT IS SO RECOMMENDED.

July 9, 2014                                    Kaymani D. West
Florence, South Carolina                  United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 2317**
**Florence, South Carolina 29503**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).