IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ORANGEBURG DIVISION

| | |
|---|---|
| WILLIAM SPISSINGER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 5:12-cv-3454-DCN |
| vs. ) | |
| ) | **ORDER** |
| CAROLYN W. COLVIN, *Acting* ) | |
| *Commissioner of the Social Security* ) | |
| *Administration*, ) | |
| ) | |
| Defendant. ) | |
| ) | |

      This matter is before the court on a motion for attorney's fees filed by claimant William Spissinger ("Spissinger") pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d)(1)(A). Brown requests $8,249.49 in attorney's fees and $350.00 for costs and expenses on the ground that he is a prevailing party under the EAJA. ECF No. 23 at 2–3. Carolyn W. Colvin, Acting Commissioner of the Social Security Administration (the "Commissioner") argues that Spissinger is not entitled to such fees and costs because the Commissioner's position in this litigation was substantially justified.

## I. BACKGROUND

      Spissinger filed an application for disability insurance benefits ("DIB") on January 19, 2010, alleging disability beginning on November 2, 2009. The Social Security Administration denied Spissinger's claim initially and on reconsideration. Spissinger requested a hearing before an administrative law judge ("ALJ"), and a hearing was held on May 19, 2011. The ALJ issued its decision on June 27, 2011, finding that Spissinger was not disabled under the Social Security Act. The Appeals

1

Council declined to review the ALJ's decision, and Spissinger filed the instant action on December 6, 2012. The magistrate judge issued an R&R on July 9, 2014, recommending that this court affirm the ALJ's decision. Spissinger filed objections to the R&R on July 16, 2014, arguing that the magistrate judge erred in: (1) finding that the ALJ properly gave little weight to his treating physician; (2) finding that the ALJ properly determined that his mental impairments were non-severe; (3) finding that the ALJ properly evaluated his credibility; (4) determining that remand is not required to give further consideration to his obesity; and (5) finding that the ALJ properly relied on vocational expert testimony. The Commissioner responded to Spissinger's objections on July 28, 2014.

On September 29, 2014, the court issued an order rejecting the magistrate judge's recommendation, reversing the Commissioner's decision, and remanding for further administrative proceedings (the "Order"). ECF No. 21. The Order only addressed Spissinger's credibility argument, finding that the ALJ improperly failed to account for Spissinger's work history in evaluating Spissinger's testimony regarding the "intensity, persistence and limited effects of [his] symptoms." Order at 5 (alteration in original) (quoting Tr. 30). The court did not address any of Spissinger's other objections, but did state that "the ALJ should consider [such objections]" on remand. Id. at 6.

## II.   DISCUSSION

### A.   Prevailing Party

Under the EAJA, a court shall award reasonable attorney's fees to a prevailing party in certain civil actions against the United States unless the court finds that the

2

government's position was substantially justified or that special circumstances render an award unjust. 28 U.S.C. § 2412(d)(1)(A). To qualify as a "prevailing party," a party "must succeed on the merits of a claim." S-1 By & Through P-1 v. State Bd. of Educ. of N.C., 6 F.3d 160, 170 (4th Cir. 1993) (Wilkinson, J., dissenting), adopted as majority opinion, 21 F.3d 49 (4th Cir. 1994) (en banc). "In other words, success must be something buttressed by a court's authority or required by a rule of law. The lawsuit must materially alter the 'legal relationship' between plaintiffs and defendants." Id. Because this court remanded Spissinger's case to the ALJ pursuant to 42 U.S.C. § 405(g), Spissinger is considered the "prevailing party" under the EAJA. See Shalala v. Schaefer, 509 U.S. 292, 302 (1993).

### B.     Substantially Justified

The government has the burden of proving that its position was substantially justified. Crawford v. Sullivan, 935 F.2d 655, 658 (4th Cir. 1991). Evaluating whether the government's position was substantially justified is not an "issue-by-issue analysis" but an examination of the "totality of circumstances." Roanoke River Basin Ass'n v. Hudson, 991 F.2d 132, 139 (4th Cir. 1993); see also Hensley v. Eckerhart, 461 U.S. 424, 437 (1983) ("A request for attorney's fees should not result in a second major litigation."). "The government's position must be substantially justified in both fact and law." Thompson v. Sullivan, 980 F.2d 280, 281 (4th Cir. 1992). Substantially justified does not mean "justified to a high degree, but rather justified in substance or in the main —that is, justified to a degree that could satisfy a reasonable person." Pierce v. Underwood, 487 U.S. 552, 565 (1988) (internal quotation marks omitted). "The government's non-acquiescence in the law of the

circuit entitles the claimant to recover attorney's fees." Crawford v. Sullivan, 935 F.2d 655, 658 (4th Cir. 1991); see also Adams v. Barnhart, 445 F. Supp. 2d 593, 595 (D.S.C. 2006) ("Where the government's position was a result of its failure to perform a certain analysis required by the law and its regulations, the government's position was not substantially justified."). There is no presumption that losing the case means that the government's position was not substantially justified. Crawford, 935 F.2d at 656.

Spissinger argues that the Commissioner's position in this action was unreasonable because 20 C.F.R. § 404.1529, SSR 96-7p, and prior case law all required the Commissioner to consider Spissinger's strong work history in evaluating his credibility. Pl.'s Mot. 3. However, a more precise reading of the Order reveals that the court based its decision on the ALJ's failure to "mention" Spissinger's prior work record, which the court deemed to be a failure to "consider" such evidence under 20 C.F.R. § 404.1529 and SSR 96-7p. Order at 5–6. Neither 20 C.F.R. § 404.1529 nor SSR 96-7p explicitly require the ALJ to "discuss" or "mention" a claimant's work history, but state only that such evidence must be "considered." See 20 C.F.R. § 404.1529 ("We will consider all of the evidence presented, including information about your prior work record . . . ."); SSR 96-7p (stating that an "[a]ssessment of the credibility of an individual's statements about pain or other symptoms . . . must be based on a consideration of all of the evidence in the case record," including "prior work record and efforts to work"). Thus, the court's ruling in this case was based on its interpretation of the word "consider" to require some explicit discussion of a claimant's work history.

4

At the time of the court's Order, a number of courts—including one court in this district—had taken a different position on this issue, finding that an ALJ is <u>not</u> required to explicitly discuss a claimant's work history in evaluating the claimant's credibility.  See <u>Sondergeld v. Colvin</u>, 2013 WL 3465294, at *6 (W.D.N.C. July 10, 2013) ("[T]he ALJ's failure to specifically discuss [p]laintiff's good work history does not undermine his credibility assessment."); <u>Ramey v. Astrue</u>, No. 4:11-cv-2762, 2012 WL 6093797, at *5 (D.S.C. Dec. 7, 2012) (rejecting plaintiff's argument that remand was required because ALJ failed to consider "long and exemplary work history" in evaluating plaintiff's testimony regarding her "pain and other subjective symptoms"); <u>Laws v. Astrue</u>, 2009 WL 3270770, at *8 (E.D. Va. Oct. 8, 2009) (affirming ALJ's decision where ALJ failed to discuss the plaintiff's work record in connection with credibility determination).  The Order even cited a prior decision from this court recognizing the lack of consensus on this issue.  See <u>Osgood v. Astrue</u>, No. 2:08-cv-03386-DCN, 2010 WL 737839, at *9 (D.S.C. Mar. 2, 2010) (recognizing that "[s]ome district courts have upheld the ALJ's credibility determination where the ALJ failed to note a plaintiff's work history").  Thus, at the time of this court's decision, a number of other courts in this circuit had determined that an ALJ need not explicitly discuss a claimant's positive work history in evaluating the claimant's credibility.

It is also significant that the magistrate judge in this case was convinced that the ALJ's failure to discuss Spissinger's work history did not require remand and cited authority supporting that position.  See ECF No. 15, R&R at 20 n.8 ("No reversible error is shown by the ALJ's failure to include consideration of Plaintiff's

5

long work history in his credibility analysis. While a good work history is certainly one factor that an ALJ may consider in weighing credibility, it is not dispositive." (citing Sondergeld, 2013 WL 3465294, at *6)). Although the magistrate judge's agreement with the Commissioner's position is not dispositive, it provides additional evidence that the Commissioner's position was substantially justified. See McKoy v. Colvin, 2013 WL 6780585, at *3 (D.S.C. Dec. 19, 2013) ("While not determinative, the fact that the Magistrate Judge recommended that the Commissioner's decision be affirmed suggests that the Commissioner's position was substantially justified."). Under these circumstances, the court concludes that the Commissioner's position was at least reasonable, and thus, "substantially justified" under 28 U.S.C. § 2412(d)(1)(A).

    Spissinger also argues that "the court [] found at least some merit to [p]laintiff's other arguments as it directed the ALJ to consider them following remand," and contends that these issues must also be considered in the substantial justification context. Pl.'s Mot. 3; Pl.'s Reply 2. As an initial matter, the court did not make any findings with respect to Spissinger's other objections to the R&R. Thus, Spissinger is incorrect in asserting that the court "did not agree with the [m]agistrate [j]udge's R&R on any of the other rulings in the case." Pl.'s Reply 2. The Order simply stated that "the ALJ should consider Spissinger's other allegations of error." Order at 6. This language was included to give the ALJ an opportunity to resolve such issues on remand without the expense of additional judicial resources. It was most certainly not a finding of error, as evidenced by the court's use of the phrase "allegations of error." Id. Thus, the court has not made any findings

6

whatsoever with respect to Spissinger's arguments that the magistrate judge erred in: (1) finding that the ALJ properly gave little weight to his treating physician; (2) finding that the ALJ properly determined that his mental impairments were non-severe; (3) determining that remand is not required to give further consideration to his obesity; and (4) finding that the ALJ properly relied on vocational expert testimony.

Nevertheless, in evaluating whether the Commissioner's position was substantially justified, it is necessary to "look beyond the issue on which [Spissinger] prevailed to determine, from the totality of the circumstances, whether the government acted reasonably in causing the litigation or in taking a stance during the litigation." United States v. 515 Granby, LLC, 736 F.3d 309, 315 (4th Cir. 2013) (quoting Roanoke River Basin Ass'n, 991 F.2d at 139). Therefore, the court has reviewed the parties' prior arguments to determine whether the Commissioner's overall position was substantially justified, keeping in mind that this review is not intended as an opportunity to re-litigate every issue in the case. See Hensley, 461 U.S. at 437 ("A request for attorney's fees should not result in a second major litigation.").

At the outset, the court again notes that the magistrate judge recommended affirming the ALJ's decision, which provides some evidence that the Commissioner's position was substantially justified. McKoy, 2013 WL 6780585, at *3. A review of the R&R and the Commissioner's reply to Spissinger's objections bolsters this conclusion.[1] None of Spissinger's arguments were so strong that it was unreasonable

---

[1] Spissinger cites his objections to the R&R to argue that the Commissioner's overall position in this litigation was not substantially justified. See ECF No. 27 at 2 ("For the reasons detailed in Plaintiff's objections, which do not require further

for the Commissioner to oppose his challenge to the ALJ's decision. Indeed, it is not even clear that Spissinger would have prevailed on any of his other objections.

With respect to Spissinger's first argument, that the ALJ erred in discounting the opinion of his treating physician, Dr. Steven Chun, the court notes that the both the magistrate judge and the Commissioner pointed to various sections of the record supporting the ALJ's decision. See Tr. 24–30 (discussing medical records and plaintiff's activities of daily living). While Spissinger claimed that the R&R improperly relied on "post-hoc rationalizations" of the ALJ's decision on this issue, the Commissioner's reply plausibly argued that the R&R was simply highlighting additional record evidence supporting the ALJ's original rationale, not offering post-hoc rationalizations. ECF No. 19. The Commissioner also cited extensive authority permitting courts to engage in such analysis. ECF No. 19 n.1 (collecting cases). To the extent Spissinger argued that the ALJ exaggerated Spissinger's activities of daily living, the court has reviewed Spissinger's testimony on the subject and finds the ALJ's summary to be accurate.[2] See Tr. 25, 29, 90–103. Thus, the Commissioner was substantially justified in arguing that the opinion of Spissinger's treating physician should be given little weight.

In challenging the ALJ's determination that Spissinger did not suffer from a severe mental impairment, Spissinger argued that the ALJ improperly relied on Spissinger's GAF scores, noting that the DSM-5 no longer endorses the use of GAF scores. ECF No. 8. While the DSM-5 may have disavowed the use of GAF scores,

---

elaboration here, the ALJ committed numerous other reversible errors that must be considered in the substantial justification context.").

[2] Spissinger also relied on this argument to attack the ALJ's determination that he did not suffer from a severe mental impairment. ECF No. 17 at 7.

the Social Security Administration has done the opposite.  See SSA, AM-13066, "Global Assessment of Functioning (GAF) Evidence in Disability Adjudication" (effective July 22, 2013) ("For purposes of the Social Security disability programs, when it comes from an acceptable medical source, a GAF rating is a medical opinion as defined in 20 CFR § 416.927(a)(2).").  While GAF scores may require a somewhat more nuanced analysis than other medical opinion evidence, the court finds that the Commissioner was not unreasonable in defending the ALJ's use of such scores in his analysis.  Moreover, the GAF scores were not the sole basis for the ALJ's conclusion that Spissinger lacked a severe mental impairment.  See Tr. 27–28 (discussing evidence of Spissinger's daily activities, social functioning, concentration, persistence or pace, and episodes of decompensation, and noting numerous problems with opinion evidence offered by treating psychologist).  Spissinger also took issue with the ALJ's characterization of his treatment with Dr. Lynn Bernstein as "sporadic," and claims that the ALJ had no way of knowing this because the psychological treatment records were never made part of the record.  ECF No. 7.  However, Dr. Bernstein's July 16, 2010 Psychological Summary provides support for the ALJ's position, stating that Dr. Bernstein saw Spissinger "on and off during the past 4 years" and noting a gap in treatment of nearly a year.  Tr. 269.  Spissinger's objections also fail to address the magistrate judge's finding that, even if the ALJ erred in determining that Spissinger did not suffer from a severe mental impairment, such error was harmless because the ALJ considered the limitations caused by Spissinger's mental impairments on his residual functional capacity.  R&R at 17 n.7; Tr. 28–29 (mentioning symptoms associated with mental impairments, such as stress,

depression, and limitations on daily activities in residual functional capacity analysis). This position has some support in prior case law. See Conard v. Comm'r, Soc. Sec. Admin., 2013 WL 1664370, at *2 (D. Md. Apr. 16, 2013) (concluding that error in evaluation of impairments at step two was harmless where "ALJ continued with the sequential evaluation process and considered all of the impairments, both severe and non-severe, that significantly impacted [the claimant's] ability to work"). Thus, the court concludes that the Commissioner's position on the mental impairment issue was substantially justified.

Spissinger's final two arguments were both derivative of the arguments discussed above. Spissinger argued that the ALJ's failure to consider the effects of his obesity was not harmless error because there were other flaws in the ALJ's residual functional capacity assessment. ECF No. 17 at 12. Spissinger also argued that the ALJ's reliance on the vocational expert's testimony was in error because of the flawed residual functional capacity assessment. Id. To support the underlying premise of both arguments—that the ALJ had somehow erred in conducting the residual functional capacity assessment—Spissinger simply cited his prior arguments regarding Dr. Chun's testimony, his mental impairments, and his own credibility. Having determined that the Commissioner was substantially justified in disputing each of these arguments, the court concludes that the Commissioner was also justified in opposing Spissinger's derivative arguments.

Thus, the court concludes that the Commissioner was substantially justified in maintaining its position in this litigation. The court wishes to emphasize that this conclusion does not imply anything about the merits of Spissinger's arguments,

except that Spissinger's entitlement to relief in this action was not so clear that it was unreasonable for the Commissioner to defend the ALJ's decision.

### III.   CONCLUSION

For the foregoing reasons, the court **DENIES** Spissinger's motion for attorney's fees.

**AND IT IS SO ORDERED**.

_____
**DAVID C. NORTON
UNITED STATES DISTRICT JUDGE**

**December 29, 2016
Charleston, South Carolina**